UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

| | | |
|---|---|---|
| THOMAS THOMPSON, on behalf of plaintiff and a class, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CAUSE NO.: 2:09-CV-311-TS |
| BAC HOME LOANS SERVICING, L.P., and BAC GP, LLC | ) ) ) | |
| Defendants. | ) | |

## OPINION AND ORDER

Defendants BAC Homes Loans Servicing, L.P. and BAC GP, LLC, have filed a Motion to Dismiss [DE 9] Plaintiff Thomas Thompson's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). The Plaintiff alleges that Defendant BAC Home Loans violated the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692g, because it did not send the Plaintiff the statutorily-required notice, known as a Validation Notice, within five days after it first communicated to the Plaintiff that his home mortgage loan had been transferred from his previous servicer to BAC Home Loans. The Defendants' Motion to Dismiss turns on whether the communication that BAC Home Loans sent to the Plaintiff was an initial communication that triggered the Validation Notice requirements of the FDCPA. Defendant BAC GP is sued as the general partner of BAC Home Loans.

## BACKGROUND

On September 25, 2009, the Plaintiff filed a Complaint on behalf of himself and a purported class of persons similarly situated. According to the Complaint, the Defendant acquired the Plaintiff's home mortgage loan from his previous servicer and sent the Plaintiff a

notice of this transfer, which is attached to the Complaint as Exhibit A. The Plaintiff alleges that the Defendant violated the FDCPA when it did not send the Plaintiff the Validation Notice required by 15 U.S.C. § 1692g within five days of this initial communication with the Plaintiff. According to the Complaint, the Plaintiff's loan was in default and he had filed for Chapter 13 bankruptcy.

On December 1, the Defendants moved to dismiss the Complaint pursuant to Rule 12(b)(6). The Defendant argues that its communication did not trigger the Validation Notice requirements, and that even if it did, the Defendants were precluded from sending the Plaintiff a Validation Notice because of his pending bankruptcy. The Defendants attach the Plaintiff's Chapter 13 bankruptcy petition to their Motion to Dismiss.

In the Plaintiff's Response to Defendants' Motion to Dismiss [DE 13], filed on December 16, he argues that the Notice, because it directs the Plaintiff to send payment, relates to the collection of a debt. The Plaintiff also contends that the fact that he was in bankruptcy did not excuse the Defendants' failure to provide the § 1692g notice.

## DISCUSSION

**A.  Standard of Review**

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint and not the merits of the suit. *Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990). The court presumes all well-pleaded allegations to be true, views them in the light most favorable to the plaintiff, and accepts as true all reasonable inferences to be drawn from the allegations. *Whirlpool Fin. Corp. v. GN Holdings, Inc.*, 67 F.3d 605, 608 (7th Cir.

1995).

The Supreme Court has articulated the following standard regarding factual allegations that are required to survive dismissal:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitlement to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotation marks, ellipsis, citations, and footnote omitted). A complaint must contain sufficient factual matter to "state a claim that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 556).

Although the court must accept as true all well-pleaded facts and draw all permissible inferences in the Plaintiff's favor, it need not accept as true "threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 129 S. Ct. at 1949. Legal conclusions can provide a complaint's framework, but unless well-pleaded factual allegations move the claims from conceivable to plausible, they are insufficient to state a claim. *Id.* at 1950–51. A plaintiff can also plead himself out of court if he pleads facts that preclude relief. *See Edwards v. Snyder*, 478 F.3d 827, 830 (7th Cir. 2007); *McCready v. Ebay, Inc.*, 453 F.3d 882, 888 (7th Cir. 2006).

**B.     When a Validation Notice is Required Under the FDCPA**

The FDCPA forbids a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt," 15 U.S.C. § 1692e, and such use includes a "failure to disclose in the initial written communication with the consumer . . . that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose," § 1692e(11). The provision of the FDCPA at issue in this lawsuit, § 1692g(a), requires the debt collector either "[w]ithin five days after the initial communication with a consumer in connection with the collection of any debt," or in the initial communication itself to "send the consumer a written notice containing" certain information about the debt and the consumer's right to dispute the validity of the debt within thirty day of the communication. 15 U.S.C. § 1692g. The debt collector is also required to advise the consumer that "upon the consumer's written request, . . . the debt collector will provide the . . . name and address of the original creditor." *Id.* § 1692g(a)(5). Upon receipt of such request, or if the consumer disputes the debt, the debt collector must "cease collection of the debt" until a verification of the debt and the original creditor is mailed to the consumer. § 1692g(b). A correspondence from the creditor to the debtor containing this information is known as a Validation Notice.

The Court must decide whether the notice from the Defendants, informing the Plaintiff that his mortgage loan was transferred to a new servicer was an "initial communication with a consumer in connection with the collection of" the Plaintiff's debt, thus triggering the duty to provide the Validation Notice. The FDCPA defines "communication" as "conveying of information regarding a debt directly or indirectly to any person through any medium." 15 U.S.C. § 1692a(2). However, the FDCPA does not define "in connection with the collection

4

of any debt."

C.     **The Contents of the Servicing Notice**

The six-page notice, which the Defendants refer to as a Servicing Notice, begins by stating that effective on a certain date, "the servicing of [the Plaintiff's] mortgage loan, that is, the right to collect payments from [him]" was being transferred from the previous servicer to BAC Home Loans Servicing LP, a subsidiary of Bank of America, NA. The Notice states that the law requires that the servicer provide notice that the servicing of the loans is being transferred, identifies the present servicer, and provides the payment remittance address of the new servicer (the Defendant), as well as payment instructions, a payment coupon with the amount due, and information about optional insurance. Near the bottom of the first page, the Notice includes the following: "BAC Home Loans is required by law to inform you that this communication is from a debt collector attempting to collect a debt, and any information obtained will be used for that purpose. We may charge you a fee for any payment returned . . . by your financial institution, subject to applicable law." (DE 1 at 9, Ex. A.) In a section on the second page titled "Borrower's Rights," the Notice sets forth the rights that are granted to consumers in Section 6 of the Real Estate Settlement Procedures Act (RESPA). The Notice also advises that the Defendant can report information about the account to the credit bureau. The third and fourth pages of the Notice are Bank of America's 2009 Privacy Policy for Consumers, and the fifth page is labeled "Federally Required Affiliate Marketing Notice." The sixth and final page is an "Important Notice to Borrowers Who are Debtors in a Current Bankruptcy Proceeding or Who Have Received a Discharge Concerning the Home Loan." In this Notice, the Plaintiff is

advised that it is the Defendants' policy to communicate directly with an attorney who represents a borrower and that the borrower should give the package to his attorney if he is represented by one. It also states that the purpose of the Notice is to advise of the transfer of the servicing of the mortgage, that if the borrower is currently in a bankruptcy proceeding that the notice is for informational purposes only, that the "notice and courtesy payment coupon attached are not intended as an action to recover or enforce a claim," and that if he is a Chapter 13 debtor he should continue to make payments in accordance with his plan and ignore the courtesy payment coupon. The notice concludes by stating that it is an "informational statement <u>only</u>." (DE 1, Ex. A (emphasis in original).)

### D.     In Connection with the Collection of Any Debt

Whether a communication was sent "'in connection with' an attempt to collect a debt is a question of objective fact, to be proven like any other fact." *Ruth v. Triumph Partnerships*, 577 F.3d 790, 798 (7th Cir. 2009) (holding that the "in connection element" need not be established by extrinsic evidence of what the unsophisticated consumer might think). The Defendants contend that the Servicing Notice was sent pursuant to their obligations under RESPA, which requires that the transferee of a loan notify the borrower of any assignment, sale, or transfer of their loan "not more than 15 days after the effective date of transfer or the servicing of the mortgage loan." 12 U.S.C. § 2605(c)(1), (c)(2)(A). *Ruth* counsels that the subjective purpose of the communication does not control. In *Ruth*, the two defendants, a company that purchased defaulted debts and attempted to recover them, and a debt collection agency, argued that a Privacy Notice of Financial Information was not sent to the plaintiff for the purpose of collecting

6

her outstanding credit card debt, but to satisfy its obligations under the Gramm-Leach-Bliley

Act.[1] The court was unpersuaded, and found that any reasonable trier of fact would conclude that

the notice was sent in connection with an attempt to collect a debt on the basis of the following:

> The notice was sent in the same envelope as the collection letter, which the
> defendants admit was sent for debt-collection purposes. Both the notice and the
> letter refer to both defendants: Triumph Partnerships, the owner of the defaulted
> debt, and TAS, the company hired to try to collect it. The only relationship the
> defendants had with the plaintiffs arose out of Triumph Partnerships' ownership
> of the plaintiffs' defaulted debt. In sum, the defendants would not have sent this
> combination of materials to the plaintiffs if they had not been attempting to
> collect a debt.

577 F.3d at 799. *Ruth* thus dictates that is not the stated subjective purpose of the Defendants'

Servicing Notice—to comply with RESPA—that controls the inquiry.

In reviewing the materials objectively, the language used in the communication is

important in determining whether it was sent "in connection with the collection of a debt." *See*

*Bailey v. Security Nat'l Serv. Corp.*, 154 F.3d 384, 387 (7th Cir. 1998). In *Bailey*, the Seventh

Circuit held that a letter informing debtors about the current status of an account and future

payments was not a communication in connection with the collection of any debt. The letter

informed the debtors that they owed $551.00 by a certain date, advised them of the due dates of

their upcoming payments, and contained a warning that failure to pay the monthly installments

would cause the forbearance agreement to become null and void and result in acceleration. *Id.* at

387–89. In holding that the letter was not in connection with the collection of any debt, the court

noted that the letter did not "'demand' any payment whatsoever, but merely inform[ed] [debtors]

about 'the current status' of their account," that the due dates listed in the letter were all

---

[1] The Gramm-Leach-Bliley Act is a federal statute that, among other things, requires financial institutions to send a privacy notice when a new consumer relationship is established.

prospective, and that the letter did not "even imply that anything owed under the [debtors'] forbearance agreement [was] overdue." *Id.* at 388–89. Regarding the warning about failing to pay monthly installments, the court reasoned that "[a] warning that something bad might happen if payment is not kept current is not a dun, nor does it seek to collect any debt, but rather the opposite because it tries to prevent the circumstance wherein payments are missed and a real dun must be mailed." *Id*. at 389.

Although the letter in *Bailey* did not address a debt that was delinquent in its status, and the mortgage at issue here was already in default, this distinction does not change the nature of the communication in this case to one that was in connection with the collection of any debt. The Notice does not address the status of the Plaintiff's home mortgage loan, declare that it is in default, or demand any payment pursuant to such default. Rather, just as in *Bailey*, the Notice indicates that amount that is due for the next regular payment, and does so via a courtesy payment coupon that does not even contain a due date. The Notice also advises the borrower that if his previous servicer was automatically deducting monthly payments from a bank account, to disregard the attached coupon because BAC Home Loans would continue that service without interruption. There is no indication that the Defendants are undertaking collection efforts for missing or late payments. Rather, they are providing information about the new servicer, including its payment remittance address, so that the consumer can avoid missing payments or making late payments—which might necessitate the sending of a real dun. *Bailey*, 154 F.3d at 389; *see*, *e.g.*, *Mabbitt v. Midwestern Audit Serv., Inc.*, No. 07-11550, 2008 WL 723507 (E.D. Mich. Mar. 17, 2008) (finding that a letter notifying a customer that her outstanding balance had been transferred to her new account for her "convenience in making payment" did not contain

language that she was "required to pay the debt" and thus was not communication in connection with the collection of any debt). There is no mention of default, delinquency, or foreclosure.

The combination of materials sent to the Plaintiff does not suggest that the Defendants would not have sent the materials if they had not been attempting to collect a debt. Nothing about the rights that are granted to consumers in RESPA (page 2), Bank of America's Privacy Policy for Consumers (pages 3–4), the "Federally Required Affiliate Marketing Notice" (page 5) or the "Important Notice to Borrowers Who are Debtors in a Current Bankruptcy Proceeding or Who Have Received a Discharge Concerning the Home Loan" (page 6), resembles a communication that demands payment of a delinquent debt. In fact, the final page advises the Plaintiff that the purpose of the Notice is to advise of the transfer of the servicing of the mortgage, but that if the borrower is currently in a bankruptcy proceeding that the notice is for informational purposes only, and that the "notice and courtesy payment coupon attached are not intended as an action to recover or enforce a claim." The combination of materials would demonstrate to the objective recipient that the Defendant was not taking any position regarding the different scenarios that could apply to the status of the Plaintiff's loan, i.e., whether he was current with payments, was in default or foreclosure proceedings, had filed for bankruptcy, or had negotiated a work-out plan.

However, language that is required by the FDCPA to be in any initial communication with a consumer was located on the bottom of the first page: "this communication is from a debt collector attempting to collect a debt, and any information obtained will be used for that purpose." (Pl.'s Compl., Ex. A, Notice at 1); *see* 15 U.S.C. § 1692e(11). The Court finds that including this language on the second page did not alter the nature of the communication or the

9

information provided in the letter. *Cf. Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 399 (6th Cir. 1998) ("We note that the mere fact that the letter states at the bottom that it 'is an attempt to collect a debt' does not transform the letter into an unlawful demand for payment."). Although ensuring payment of the debt cannot be denied as the Defendant's ultimate goal, the Notice itself did not provide terms of payment or deadlines, threaten further collection proceedings, or demand payment in any form.

Assuming all well-pleaded facts in the Plaintiff's Complaint are true, the Plaintiff does not state a claim upon which relief can be granted. A reasonable person would not believe that the Notice attached to the Complaint and relied upon by the Plaintiff to state a claim was a debt collection demand and thus a communication in connection with the collection of his debt. Accordingly, it was not a communication that triggered the requirement to send a Validation Notice.

## CONCLUSION

For the foregoing reasons, the Defendants' Motion to Dismiss Plaintiff's Complaint [DE 9] is GRANTED.

SO ORDERED on March 26, 2010.

                                              s/ Theresa L. Springmann
                                              THERESA L. SPRINGMANN
                                              UNITED STATES DISTRICT COURT
                                              FORT WAYNE DIVISION